# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DESMOND CHARLES PARKER (#569648)**                    **CIVIL ACTION NO.**

**VERSUS**                                                                      **18-544-JWD-SDJ**

**JASON KENT, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE=S REPORT.

Signed in Baton Rouge, Louisiana, on September 28, 2020.

_____

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**DESMOND CHARLES PARKER (#569648)**                **CIVIL ACTION NO.**

**VERSUS**                                                      **18-544-JWD-SDJ**

**JASON KENT, ET AL.**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is a Motion for Summary Judgment[1] filed by Defendants, Jason Kent, Keith Turner, Dewey Phillips, and Cherryl Washington. The Motion is opposed.[2] For the following reasons, the undersigned recommends the Motion be granted in part and denied in part. The undersigned further recommends that Dr. MacMurdo, Jeff Smalls, Jeremy Mitchell, Donnell Jones, and Troy Johnson be dismissed *sua sponte*.

  **I.**   **Background**

Desmond Charles Parker, who is representing himself and is confined at the Dixon Correctional Institute in Jackson, Louisiana, instituted this action against Jason Kent, Keith Turner, Dewey Phillips, Jeff Smalls, Jeremy Mitchell, Donnell Jones, Troy Johnson, Dr. MacMurdo, and Cherryl Washington on May 3, 2018.[3] Parker complains of the following incidents occurring at DCI. Incident one[4] occurred on October 29, 2017, and involved Defendant Phillips allegedly using excessive force against Parker.[5] Parker alleges he was returning from pill call when Phillips stopped him, inquired into what was in his hand, and "stuck his index and middle finger in [Parker's] mouth" after Parker had swallowed the pill.[6]

---

[1] R. Doc. 14.
[2] R. Docs. 16 & 22.
[3] R. Docs. 1, 4, & 25.
[4] Though in some instances each labeled "incident" includes, in reality, multiple incidents, for ease of reference, the facts are grouped together as incidents.
[5] R. Doc. 1, p. 5.
[6] R. Doc. 1, p. 5.

Incident two occurred in November 2017 when Dr. MacMurdo "refused to give plaintiff a bottom bunk only status," despite that, earlier in the month, an outside doctor had recommended surgery for Parker.[7]  Parker alleges this constitutes deliberate indifference.[8]  Incident three occurred in March 2018 when Parker alleges Kent ordered all blankets and jackets to be taken from the inmates leaving them exposed to cold temperatures at night with nothing but a thin sheet to cover with.[9]

Incident four occurred on April 12, 2018, when Parker was placed in administrative segregation.[10]  Parker alleges he was placed in administrative segregation without a mat for three days and without sheets for four days.[11]  Parker further alleges that, throughout the seven days he was in administrative segregation, he did not receive his prescribed medication.[12]  Parker also complains that the living conditions where he was housed for those seven days are "poor at best."[13]  Parker avers the cells and showers are "filthy" and covered with dirt, feces, and black mold and that roaches and spiders "roam as if in paradise."[14]  Parker also complains that the temperature in that particular section of the prison stays either extremely cold or "exhaustingly hot."[15]  He contends that these conditions violate the Constitution.[16]

Incident five involves alleged interference with the grievance process.  Plaintiff alleges that Washington and Turner are intentionally ignoring prisoner complaints and are manipulating the

---

[7] R. Doc. 1, p. 6.
[8] R. Doc. 1, p. 6.
[9] R. Doc. 1, p. 6.
[10] R. Doc. 1, p. 6.
[11] R. Doc. 1, pp. 6-7.
[12] R. Doc. 1, p. 7.
[13] R. Doc. 1, p. 7.
[14] R. Doc. 1, p. 7.
[15] R. Doc. 1, p. 7.
[16] R. Doc. 1, p. 7.

grievance process to interfere with prisoner's complaints.[17]  Parker seeks monetary and injunctive relief.[18]

## II.    Law & Analysis

### a.  Standard of Review

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, such that the moving party is entitled to judgment as a matter of law.[19]  A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[20]  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[21]  Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[22]  In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party, and may not evaluate the credibility of witnesses, weigh the evidence, or resolve material factual disputes.[23]

---

[17] R. Doc. 1, p. 7.
[18] R. Doc. 4, p. 7.
[19] Rule 56, Federal Rules of Civil Procedure.  *See also, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[20] *Celotex Corp.*, 477 U.S. at 323.
[21] *Anderson*, 477 U.S. at 248.
[22] *Celotex Corp.*, 477 U.S. at 323.
[23] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

### b. Parker Failed to Exhaust Administrative Remedies with Respect to Incidents One and Four

Defendants contend that Parker failed to exhaust administrative remedies prior to filing suit.  Pursuant to 42 U.S.C. § 1997e, Plaintiff was required to exhaust administrative remedies available to him at the prison before bringing a civil action in this Court with respect to prison conditions.[24]  This provision is mandatory and applies broadly to "all inmate suits about prison life."[25]  Further, to exhaust administrative remedies, a prisoner must follow applicable prison grievance procedures before filing a suit relative to prison conditions.[26]  This requires compliance with an agency's deadlines and other critical procedural rules.[27]  The Fifth Circuit has taken a strict approach to § 1997e's exhaustion requirement, under which prisoners must not just substantially comply with the prison's grievance procedures, but instead must "exhaust available remedies properly."[28]  One of the principal purposes of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'"[29]  The degree of specificity required in a prisoner's grievance should be evaluated in light of this intended purpose.[30]

The Louisiana Department of Public Safety and Corrections has implemented a two-step administrative process, which generally requires the submission of an initial grievance to the warden's office at the inmate's facility,[31]  although an inmate who is confronted with a matter of sufficient seriousness may bypass the normal administrative procedure and may file a grievance

---

[24] 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."
[25] *Porter v. Nussle*, 534 U.S. 516, 532 (2002).
[26] *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004).
[27] *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).
[28] *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010).
[29] *Johnson*, 385 F.3d at 516, *quoting Porter*, 534 U.S. at 525.
[30] *Id.*
[31] *See* 22 La. Admin. Code, Part I, § 325.

4

as one addressing a "problem of an emergency nature."[32]  In either instance, upon receipt, prison officials must provide a written response (the "First Step Response") within 40 days (reduced to 5 days in connection with a Prison Rape Elimination Act claim) unless there is an extension requested or the grievance is placed on administrative backlog (because of other pending grievances).[33]

If the inmate is not satisfied with the First Step Response, the inmate has five days after receipt to submit a Second Step appeal to the office of the Secretary of the Department.  The Secretary's office then has an additional 45 days from "receipt" of the inmate's appeal to file a final Second Step Response.[34]  Under the administrative rules, no more than 90 days may pass from the start to the completion of the process, unless an extension has been granted.[35] Further, an inmate may proceed to the next step without waiting for a response once the time allowed for a response has passed at any step of the administrative process.[36]

Defendants have produced competent summary judgment evidence demonstrating that Parker never properly exhausted administrative remedies with respect to two claims in his complaint prior to proceeding to this Court.  Parker identifies the ARPs pertinent to his complaint as follows: "DCI-2017-951, DCI-2017-1068, DCI-2018-297, & DCI-2018-296."[37]  Each ARP will be discussed in turn.

Defendants have produced competent summary judgment evidence indicating that ARP DCI-2017-951 was filed at the first step, a response was issued, and Plaintiff never proceeded to

---

[32] *See* 22 La. Admin. Code, Part I, § 325(H).  An emergency grievance is submitted directly to the shift supervisor instead of to the warden's office.
[33] *See* 22 La. Admin. Code, Part I, § 325(J)(1)(a).
[34] *See* 22 La. Admin. Code, Part I, § 325(J)(1)(b).
[35] *Id.*
[36] *See* 22 La. Admin. Code, Part I, § 325(J)(1)(c).
[37] R. Doc. 4, p. 3.

the second step.[38]  The claims in DCI-2017-951 included Plaintiff's claims regarding incident one.[39]  As Plaintiff chose to proceed directly to this Court with respect to the claims of incident one, rather than proceeding, as he should have, to the second step in the administrative remedy process, these claims arising from incident one are clearly unexhausted, and Defendants are entitled to summary judgment with respect thereto.

ARPs DCI-2018-296 and DCI-2018-297 were rejected because the first concerned disciplinary matters,[40] and the latter raised "multiple issues."[41]  Thus, with respect to these ARPs, the Court must examine the propriety of these rejections.

Regarding DCI-2018-296, Parker complained of motions that he filed at his disciplinary hearing being denied.  These claims are not raised in the instant complaint; because Parker has not made these claims at this Court, whether he exhausted administrative remedies with respect to these claims is a non-issue.  Thus, the Court does not further discuss DCI-2018-297.

Turning to DCI-2018-297, Parker never attempted to remedy the defects of this rejected ARP.[42]  DCI-2018-297 involved the facts complained of in incident four.[43]  Washington, at the first step, noted that Parker's ARP was being rejected due to its containing multiple issues, including those involving complaints of medical treatment, specifically of not receiving medications, and of complaints regarding the general conditions of confinement to which Parker was subjected.  The Louisiana Administrative Code provides that the ARP screening officer may reject a request if it meets one of ten enumerated restrictions.[44]  One of the ten enumerated

---

[38] R. Docs. 14-4, p. 4 & 14-5, pp. 10-11.  *See also* R. Doc. 14-5, p. 2 (Parker did not indicate an intention to proceed to the second step.).
[39] R. Doc. 14-5.
[40] R. Doc. 14-4, p. 4.
[41] R. Doc. 14-4, p. 5.
[42] R. Doc. 14-4, p. 5.
[43] R. Doc. 14-6.
[44] 22 La. Admin. Code, Part I, § 325.

restrictions for rejecting a grievance provides that a request may be rejected if "[t]he offender has requested a remedy for more than one incident (a multiple complaint)."[45]  A rejected complaint is returned to the inmate, and the grievance process does not commence until the ARP is accepted.[46] Because Parker never submitted a procedurally proper ARP, the merits of his allegations were never considered under the first step of the ARP; thus, he failed to properly exhaust his administrative remedies.[47]

Further, the Court cannot say that the rejection was improper and thus, effectively rendered administrative remedies unavailable, because Parker's ARP did in fact complain of multiple "incidents."[48]  Parker clearly had complaints regarding his general conditions of confinement, including complaints regarding the temperature, filth, and mold, but he also included in DCI-2018-297 complaints regarding the rendering of medical care, specifically, the failure of prison officials to provide him with his prescribed medications.  Complaints regarding general conditions of confinement are clearly separable from complaints regarding provision of medical care or the lack thereof, and these complaints are sufficiently separable to constitute multiple "incidents." Accordingly, because the rejection does not appear to have been so improper as to render administrative remedies unavailable and because Parker never attempted to cure the defects of DCI-2018-297, the claims contained therein are unexhausted and subject to dismissal.

---

[45] 22 La. Admin. Code, Part I, § 325, I(g).

[46]  22 La. Admin. Code, Part I, § 325.

[47] *Abbott v. Babin*, 587 Fed.Appx. 116, 118 (5th Cir. 2014).

[48] Moreover, Parker's ARP was speedily rejected, so Parker would have had time to timely file separate ARPs, one regarding his conditions of confinement and another regarding medical care.  The fact that Parker had time to fix the deficiencies of his ARP but chose not to further supports this Court's decision to dismiss these claims for failure to exhaust administrative remedies.  *See Hayward v. Forcht Wade Correctional Center*, 2011 WL 7452079 (W.D. La. Nov. 10, 2011).

### c.  Defendants Have Not Carried Their Burden of Proof with Respect to Exhaustion of Parker's Remaining Complaints

Defendants have failed to provide any competent summary judgment evidence regarding exhaustion of Parker's complaints with respect to incidents two, three, and five.[49]  Though in Defendants' statement of undisputed facts, they state that "Plaintiff failed to submit an administrative remedy procedure grievance for his claim against Warden Jason Kent in which Plaintiff alleges that Warden Kent ordered the confiscation of state issued jackets and blankets,"[50] they have failed to provide any competent summary judgment evidence to support this assertion. Further, Defendants wholly fail to address Parker's complaint regarding his treatment by Dr. MacMurdo and his complaints regarding the grievance process.

Despite Defendants' failure to address Parker's claims regarding Dr. MacMurdo and the grievance process, the Court finds it proper to *sua sponte* dismiss these claims.  The Court possesses the inherent authority to *sua sponte* dismiss a party or expand upon the grounds for dismissal urged by movants as long as the adverse parties receive notice and a chance to respond.[51] This Report and Recommendation provides adequate notice to Parker.[52]

### i.  Parker Has Failed to State a Claim Against Dr. MacMurdo

Parker's allegations against Dr. MacMurdo fail to state a claim upon which relief may be granted and are subject to dismissal pursuant to 28 U.S.C. §§ 1915 and 1915A.  To establish a

---

[49] Though Washington states "I have had the administrative record maintained by the institution regarding Desmond Parker (DOC #569468) reviewed," she does not make any statements that demonstrate that the ARPs filed as evidence in support of summary judgment are the only ARPs on record for Parker or anything to the effect of there being no record of ARPs filed for these other incidents. R. Doc. 14-4.

[50] R. Doc. 14-2, p. 3.

[51] *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 66 F.3d 322 (5th Cir. 1995) (unpubl.) (district court *sua sponte* dismissed claims under 12(b)(6) although the defendants never filed a motion to dismiss, nor did they plead failure to state a claim in their answer).  Considering that this is a case that falls under the purview of 28 U.S.C. §§ 1915 and 1915A, this Court is also required to dismiss these claims as it is apparent that they fail to state a claim up on which relief may be granted.

[52] *McCoy v. Wade*, No. 06-2292, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties).

claim of deliberate medical indifference, an inmate plaintiff must demonstrate that appropriate medical care has been denied and that the denial amounted to "subjective recklessness as used in the criminal law."[53] *Farmer* lays out an objective prong and a subjective prong.[54] The objective prong requires a plaintiff to demonstrate that "the deprivation alleged [was], objectively, 'sufficiently serious.'"[55] Under the subjective prong, a plaintiff must show that prison officials acted with a "sufficiently culpable state of mind."[56]  The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[57]   Whether the plaintiff has received the treatment or accommodation that he believes he should have is not sufficient absent exceptional circumstances.[58] Nor do negligence, neglect, unsuccessful treatment, or even medical malpractice, give rise to a § 1983 cause of action.[59] Further, a mere delay in providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm.[60]

Applying the foregoing standard, the Court concludes that Parker has failed to state a claim of constitutional dimension relative to his claims against Dr. MacMurdo.  To the contrary, his assertions regarding not being assigned a bottom bunk duty status appear to amount to no more than a classic example of a plaintiff-inmate who merely disagrees with the considered opinions of

---

[53] *Farmer v. Brennan*, 511 U.S. 825, 839–30 (1994).

[54] *Id*. at 837.

[55] *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

[56] *Id.*

[57] *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001), *quoting Estelle v. Gamble*, *supra*.

[58] *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations omitted).

[59] *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991).

[60] *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018), citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

qualified medical personnel with regard to his appropriate care and accommodation.[61]  Parker states that when he was housed at another institution, prior to his transfer to DCI, he had a duty status that included "bottom bunk only."[62]  However, upon intake at DCI, he was given a duty status that did not include "bottom bunk only,"[63] and Parker is of the opinion that doctors at DCI should have included in his duty status bottom bunk only.[64]  Further, Plaintiff has not indicated that Dr. MacMurdo's refusal to provide him with bottom bunk duty status has subjected him to any risk of harm at all.  Accordingly, Parker has failed to state a claim for relief cognizable under § 1983, and his claims against Dr. MacMurdo are subject to dismissal.

### ii. Parker Has Failed to State a Claim Regarding the Grievance Process

An inmate does not have a constitutional right to have his prison disciplinary or administrative proceedings properly investigated, handled, or favorably resolved,[65] and there is no procedural due process right inherent in such a claim.  As stated by the United States Court of Appeal for the Fifth Circuit in *Geiger v. Jowers*:[66]

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous…[The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction.  As he relies on legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.[67]

---

[61] *See Cushenberry v. LeBlanc*, Civil Action No. 17-402, 2018 WL 9786072 at *5 (M.D. La. Sept. 10, 2018) *report and recommendation adopted by* 2018 WL 9786077 (Sept. 27, 2018).

[62] R. Doc. 1, p. 5.

[63] R. Doc. 1, pp. 5-6.

[64] The claim that Parker was not originally given bottom bunk status when transferred to DCI do not appear to form part of the complaint; rather, these facts appear to be to provide background leading up to Parker's appointment with Dr. MacMurdo.

[65] *Mahogany v. Miller*, 252 F. App'x. 593, 595 (5th Cir. 2007).

[66] 404 F.3d 371 (5th Cir. 2005) (in the context of the handling of an administrative grievance).

[67] *Id*. at 373-74.

Parker complains regarding the delay in processing his grievance regarding incident one concerning Dewey Phillips, ARP DCI-.[68]  He alleges that the delay in processing his grievance resulted in back-logging of his other "important" ARPs, which, according to Parker, demonstrates that Turner and Washington are "intentionally ignoring legitimate and important claims and manipulation of the a.r.p. process…."[69]

Regarding the process of backlogging ARPS, "[t]he rule which allows prison officials to place an inmate's grievance on administrative backlog because he has filed multiple prior grievances, resulting in a delayed consideration of later-filed grievances until prior grievances have been addressed and resolved, has been upheld as constitutional."[70]  Thus, to the extent other ARPs were backlogged due to DCI-2017-951 pending, Parker has failed to state a claim.[71]  Further, because Parker has no constitutional right to have his grievances properly investigated, handled, or favorably resolved, he fails to state a claim regarding the grievance process overall.[72]

### iii. Parker's Complaint Regarding Exposure to Cold Temperatures Against Kent is Not Subject to Dismissal

Although the constitution "does not mandate comfortable prisons,"[73] conditions of confinement "must not involve the wanton and unnecessary infliction of pain."[74]  The Eighth

---

[68] R. Doc. 1, p. 7.

[69] R. Doc. 1, p. 7.

[70] *Grayer v. Vannoy*, Civil Action No. 18-795, 2019 WL 4131100, *3, n. 30 (M.D. La. June 7, 2019) citing *Oestriecher v. Wallace*, 2007 WL 4233690, *3, n. 7 (E.D. La. Nov. 27, 2007) (noting that "the utilization of a backlog system for multiple grievances is constitutionally permissible") and *Moran v. Jindal*, 450 Fed.Appx. 353, 354 (5th Cir. 2011); *Thomas v. Prator*, 172 Fed. Appx. 602, 603 (5th Cir. 2012).

[71] Parker is correct that after the expiration of the time period for a response, he had the right to proceed to the next step; however, the next step is to proceed to step two, not directly to this Court as Parker did.

[72] To the extent Parker's allegations may be interpreted as alleging a conspiracy between Turner and Washington to infringe on inmates' rights by abusing the grievance process, he also fails to state a claim.  A plaintiff who asserts conspiracy claims under civil rights statutes, such as § 1983, must plead the operative facts upon which their claim is based.  *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987).  "Bald allegations that a conspiracy existed are insufficient."  *Id.*  Parker's conclusory claims are insufficient to state a claim for conspiracy and are thus, subject to dismissal.

[73] *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).

[74] *Id.*

Amendment's prohibition against cruel and unusual punishment requires prison officials to provide "humane conditions of confinement," ensuring that "inmates receive adequate food, clothing, shelter, and medical care…."[75]  An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  "First, the deprivation alleged must be, objectively, 'sufficiently serious;' a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'"[76]  Second, " a prison official must have a 'sufficiently culpable state of mind.'"[77]  In evaluating a conditions of confinement claim, it is appropriate to apply the deliberate indifference standard articulated in *Estelle v. Gamble*.[78]  "To establish deliberate indifference…, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.[79]

Parker alleges that Kent took blankets and jackets away from inmates, including himself, and caused the inmates to suffer through freezing temperatures, including through the night "with nothing but a thin sheet."[80]  He further alleges that on the day the jackets and blankets were taken away, the temperature was in the 40s.[81]  "Prisoners have a right to protection from extreme cold."[82] The Fifth Circuit evaluated a claim regarding extreme cold in *Palmer v. Johnson*.[83]  In *Palmer*, plaintiff was forced to remain outdoors in a field all night wearing a short-sleeved shirt and "was denied a jacket, blankets, or other means of keeping warm" resulting in his becoming "extremely

---

[75] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).
[76] *Farmer*, 511 U.S. at 832.
[77] *Id.* at 834.
[78] 429 U.S. 97 (1976).  *See Wilson v. Seiter*, 501 U.S. 294 (1991).
[79] *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).
[80] R. Doc. 1, p. 6.
[81] R. Doc. 1, p. 6.
[82] *Palmer v. Johnson*, 193 F.3d 346, 353 (5th Cir. 1999) citing *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997).
[83] *Id.*

cold as the temperature fell below fifty-nine degrees Fahrenheit."[84]  The Fifth Circuit held that the plaintiff's description of the incident suggested that his exposure to the elements (*i.e.*, cold and wind) may have risen to the level of a constitutional deprivation.[85]  The Fifth Circuit has also found that a prisoner's Eighth Amendment allegations were nonfrivolous when he alleged that "he was held in very cold conditions, for an extended period in November and December, wearing nothing but a paper gown during the daytime, and that he was ordered to remain on the cold concrete whenever he attempted to sleep on the warmer, metal bunk."[86]

Here, Parker was held in temperatures lower than that in *Palmer* with only a thin sheet and was apparently exposed to these cold temperatures numerous times over the course of one month, whereas in *Palmer*, the exposure to the cold lasted only seventeen hours.  Considering that Parker was exposed to colder temperature in numerous instances, Parker has stated a claim against Kent.  Parker's claim against Kent for taking away his jacket and blanket, thus exposing him to cold temperatures, is not subject to dismissal *sua sponte*.

### d.  Exercise of Supplemental Jurisdiction Should be Declined

To the extent that Parker's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.[87]  In the instant case, considering the narrow constitutional claim that will remain should this report and recommendation be adopted and the

---

[84] *Id.* at 349.
[85] *Id.* at 353.
[86] *Alex v. Stalder*, 225 F. App'x 313, 314 (5th Cir. 2007).
[87] 28 U.S.C. § 1367.

fact that any state law claim will require its own unique analysis, separate and apart from the constitutional anlysis, it is recommended that the exercise of supplemental jurisdiction be declined.

## **RECOMMENDATION**

**IT IS RECOMMENDED** that the Motion for Summary Judgment,[88] filed on behalf of Jason Kent, Keith Turner, Dewey Phillips, and Cherryl Washington, be **GRANTED IN PART AND DENIED IN PART;** Parker's claims against Dewey Phillips[89] and Parker's claims regarding the conditions of confinement in administrative segregation and regarding not being provided his medications[90] should be **DISMISSED WITHOUT PREJUDICE** due to Parker's failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e.

**IT IS FURTHER RECOMMENDED** that Parker's claims against Dr. MacMurdo and Parker's claims against Turner and Washington regarding the grievance procedure be **DISMISSED WITH PREJUDICE** *sua sponte* pursuant to 28 U.S.C. §§ 1915 and 1915A.

**IT IS FURTHER RECOMMENED** that this action be referred back to the undersigned for further proceedings on Parker's remaining claims (*i.e*, Parker's claims against Kent regarding exposure to extreme cold).

Signed in Baton Rouge, Louisiana, on September 28, 2020.

_____

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[88] R. Doc. 14.
[89] Incident one above.
[90] Incident four above.